UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────────

KEVIN M. MENTUS,

                         Plaintiff,

            v.

GALLINA DEVELOPMENT CORPORATION,

                         Defendant.
────────────────────────────────

**DECISION AND ORDER**

6:25-CV-06122 EAW CDH

Before the Court are three motions filed by *pro se* plaintiff Kevin M. Mentus ("Plaintiff"). Plaintiff has moved: (1) to enforce a subpoena *duces tecum* served on non-party Hanlon Architects ("Hanlon") (Dkt. 68); (2) to compel discovery and impose discovery-related sanctions against defendant Gallina Development Corporation ("Defendant") (Dkt. 74); and (3) for a "limited, asymmetric extension" of time to complete discovery (Dkt. 85 at 2-3). For the reasons explained below, the Court denies all three motions.

**BACKGROUND**[1]

On February 27, 2025, Plaintiff filed this action, asserting claims of copyright infringement, unjust enrichment, and fraudulent misrepresentation against Defendant. (Dkt. 1 at 1). Plaintiff alleges that he is the creator of an "original sculptural lighting design, Infinitum Luminares," and that in 2016, he "submitted a

---

[1]    The Court assumes familiarity with the factual and procedural background of this matter for purposes of this Decision and Order and recounts such background only as necessary to understand the Court's reasoning.

proposal for a new . . . [s]uspended [l]ight [s]culpture" to be displayed in the Metropolitan, a building in Rochester, New York, owned by Defendant. (*See id.* at 1-2 (bold omitted); *see also id.* at 71-72). Plaintiff says that "Defendant solicited access to Plaintiff's original concept, obtained drawing files, and rejected Plaintiff's proposal, yet proceeded to commission an unauthorized derivative work based directly on Plaintiff's design." (*Id.* at 1). The case has been referred to the undersigned for all pretrial matters excluding dispositive motions. (Dkt. 10). Over the past few months, a number of pretrial matters—including numerous motions filed by Plaintiff—have required this Court's attention. (*See, e.g.*, Dkt. 64; Dkt. 86; Dkt. 87; Dkt. 92).

The three motions presently pending before the Court relate to long-running discovery disputes involving Plaintiff, Defendant, and Hanlon, the architecture firm that worked with Defendant on the Metropolitan. On May 2, 2025, Plaintiff served a request for production of seven categories of documents upon Defendant. (Dkt. 24). On June 3, 2025, Plaintiff moved to compel the production of the documents he had requested, stating that Defendant had failed to respond by the deadline. (Dkt. 39 at 1-3). About a month later, on July 1, 2025, the Court issued a Decision and Order denying that motion. (Dkt. 64). The Court explained that Defendant had timely served its responses on June 3, 2025—the same day Plaintiff filed his motion and the day before those responses were in fact due under the Federal Rules of Civil Procedure. (*Id.* at 3-4).

In the same July 1 Decision and Order, the Court denied Defendant's request for sanctions. (*Id.* at 4). As the Court acknowledged (*id.*), generally, under Federal

Rule of Civil Procedure 37(a)(5)(B), any party who has unsuccessfully moved to compel production must "pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees,"[2] Fed. R. Civ. P. 37(a)(5)(B). But the Court noted that because Plaintiff was proceeding *pro se*, expense-shifting sanctions under Rule 37(a)(5) could be imposed only after he had been warned of that possibility. (Dkt. 64 at 4). It therefore declined to impose sanctions but cautioned Plaintiff that going forward, "if he file[d] a motion to compel discovery that the Court then denie[d] in full or in part, the Court [might] require him to pay Defendant [the] reasonable expenses [it] incurred in opposing the motion, including attorney's fees." (*Id.* (emphasis omitted)). It also noted that Plaintiff had not—as required by Rule 37(a)(1)—attempted to confer with Defendant in good faith before filing the motion. (*Id.* at 8-9). Accordingly, it warned him that "any future motion to compel filed without evidence of a serious good faith attempt to resolve the dispute, or without showing other circumstances justifying a waiver of Rule 37(a)(1)'s meet and confer requirement, w[ould] be summarily denied." (*Id.* at 9).

On July 2, 2025—the day after the Court denied Plaintiff's first motion to compel—Plaintiff emailed the Court a letter about ongoing discovery issues, arguing that Defendant had not adequately responded to his discovery requests. (*See* Dkt. 65 at 4-5). On July 23, 2025, the Court held an extensive discovery conference with

---

[2]    The Rule further provides that the party responsible for the motion must be afforded "an opportunity to be heard" and that the Court cannot "order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

Plaintiff and defense counsel to discuss Plaintiff's requests for production and other discovery issues. (*See* Dkt. 67). During the conference, the Court re-emphasized the importance of the meet and confer process and directed the parties to make a sincere good faith effort to resolve their discovery disputes before resorting to further motion practice. (*See id.*). To facilitate the meet and confer process, the Court directed the parties not to file any motions to compel before August 13, 2025, and allowed Defendant an opportunity to supplement its production as discussed by August 12, 2025. (*See id.*). At the same conference, Plaintiff asked about the procedure for enforcing the subpoena *duces tecum* he had served on non-party Hanlon on June 17, 2025. (*See id.*). The Court advised Plaintiff that he could file a motion to enforce the subpoena and serve that motion on both Hanlon and Defendant. (*Id.*).

Shortly after the discovery conference, on July 25, 2025, Plaintiff moved to enforce the subpoena against Hanlon.[3] (Dkt. 68). Hanlon then responded, asserting that it had fully complied with Plaintiff's subpoena. (Dkt. 77; Dkt. 77-1 at 1).

The dispute between Plaintiff and Defendant also continued unresolved. On August 12, 2025, Defendant served more than 100 pages of additional documents upon Plaintiff. (Dkt. 80-4). Nonetheless, on August 22, 2025, Plaintiff moved to compel Defendant to produce additional documents. (Dkt. 74). His motion also sought sanctions against Defendant for its purported failure to comply with its discovery

---

[3]    Despite the Court's instructions, the Certificate of Service accompanying Plaintiff's motion indicated that it was served only on Defendant, not Hanlon. (*See* Dkt. 68 at 24). The Court therefore directed Plaintiff to serve the motion on Hanlon. (Dkt. 69), and on July 29, 2025, he did so (Dkt. 70 at 3).

obligations. (*Id.*). Defendant responded on September 22, 2025. (Dkt. 78; Dkt. 79; Dkt. 80).[4]

Most recently, on September 29, 2025, Plaintiff moved for a "limited, asymmetric extension" of time to complete discovery, asking the Court to extend the fact discovery deadline to allow him to "enforce[] existing requests and [to seek] narrowly tailored follow-up tied to materials already acknowledged or ordered but not produced." (Dkt. 85 at 2-3). At the same time, he asked the Court to "[b]ar Defendant . . . from serving any new discovery requests [after] September 29, 2025." (Dkt. 85). On October 28, 2025, Defendant responded, opposing this motion. (Dkt. 94).

The Court now considers Plaintiff's motions and for the reasons explained below, denies each one.

## DISCUSSION

### I.  Discovery Issues Pertaining to Hanlon

#### A.  Motion to Enforce Subpoena

Federal Rule of Civil Procedure 45 permits a party to serve a subpoena on a non-party commanding the non-party to produce documents that are in its possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(iii). "A party . . . responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing

---

[4]    Plaintiff replied in support of both his motion to enforce the subpoena (Dkt. 82) and his motion to compel (Dkt. 83). But Local Rule of Civil Procedure 7(a)(1) requires parties to state their intent to reply in their moving papers, Loc. R. Civ. P. 7(a)(1), and this Court expressly advised Plaintiff of this requirement in its July 1 Decision and Order (Dkt. 64 at 8). And because Plaintiff did not indicate any such intent in his moving papers for either of these motions (*see* Dkt. 68; Dkt. 74), this Court—as it warned it would do (Dkt.64 at 8)—does not consider his replies here.

undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "When evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Cohen v. Grp. Health Inc.*, No. 22MC0200PAEKHP, 2022 WL 4534552, at *2 (S.D.N.Y. Sept. 28, 2022). A motion to enforce a Rule 45 subpoena is committed to the Court's discretion. *See Am. Sav. Bank, FSB v. UBS Fin. Servs., Inc.*, 347 F.3d 436, 440 n.3 (2d Cir. 2003).

In the third-party subpoena served on Hanlon, Plaintiff requested several categories of documents. (*See* Dkt 68 at 12-13). First, he sought "[a]ll communications, emails, drawings, specifications, meeting notes, and project documentation from January 1, 2015[,] to present regarding any suspended sculpture or lighting installation intended for or installed in the lobby of The Metropolitan building." (Dkt. 68 at 12). Plaintiff stated that this "include[d] but [wa]s not limited to . . . [a]ny communications or documents involving or referencing [Plaintiff], his sculpture proposal, or any proposal for a 'suspended' or 'tangled ribbon' sculpture," as well as other "drawings, renderings, concepts, . . . design discussions," or "[c]ommunications with or involving" certain individuals and entities. (*Id.*). Plaintiff also requested "[a]ll communications, internal or external, regarding the cease-and-desist letter or legal complaint sent by [Plaintiff] or his legal representative to" Hanlon and Defendant; "[a]ll documents and communications relating to the marketing, publicity, or public promotion of the Metropolitan lobby sculpture"; and "[a]ny contracts, invoices,

purchase orders, fabrication drawings, or design documents . . . regarding th[at] sculpture." (*Id.* at 13).

In his July 25, 2025 motion, Plaintiff said that Hanlon had "not responded or objected" to the subpoena with which he had served them, and he asked for "the Court's intervention to compel compliance." (*Id.* at 1-2). But that intervention is no longer needed. According to Hanlon's counsel, on July 28, 2025—one day before Plaintiff served the motion on Hanlon (Dkt. 70 at 3)—the company fully complied with Plaintiff's subpoena, (Dkt. 77-2 at ¶¶ 20-22; Dkt. 77-3 at ¶ 2). More specifically, Hanlon's counsel says that on July 28, one of Hanlon's employees "personally delivered to Plaintiff approximately 120 files, totaling roughly 700 megabytes, on a flash drive." (Dkt. 77-2 at ¶ 20). Those documents included "multiple renderings . . . documenting the [design] selection process . . . ; email correspondence with Hanlon's client regarding the sculpture; email correspondence with 3Form/LightArt, the vendor ultimately selected; and numerous floor plans reflecting the design process." (*Id.* at ¶ 21). That material—again according to Hanlon's counsel—constituted "all responsive materials within its possession, custody, or control." (*Id.* at ¶ 43).

The Court is entitled to rely on the representation of Hanlon's counsel—an officer of the court—that the company provided Plaintiff with all materials responsive to his request. *See Greer v. Carlson*, No. 120CV05484LTSSDA, 2020 WL 7028922, at *3 (S.D.N.Y. Nov. 29, 2020) (noting that "courts often rely upon statements made by counsel" as "officer[s] of the [c]ourt" who "can be subject to discipline" for making false representations). As such, Plaintiff's motion to enforce the subpoena is moot. *See, e.g.,*

*Burton v. United States*, 347 F.R.D. 25, 28 (S.D.N.Y. 2024) ("Based upon the representations made by the Government in its response to Plaintiffs' motion to compel, the documents requested in items 1, 2 and 5 already have been produced. Thus, the motion to compel with respect to these items is denied as moot." (footnote omitted)); *Kochan v. Kowalski*, No. 19-CV-251W(SR), 2022 WL 3648023, at *5 (W.D.N.Y. Aug. 24, 2022) ("In reliance upon defense counsel's statement that all videos [responsive to the subpoena] have been produced to plaintiff, and that no video of plaintiff's booking exists, the motion to quash this subpoena is granted and the motion to compel is denied as moot."); *see also Toliver v. Rosbaugh*, No. 1:16-CV-263-RJA-JJM, 2020 WL 4047474, at *1 (W.D.N.Y. July 20, 2020) (stating that the court "ha[d] no reason to doubt counsel's representations as an officer of the court, which [it was] entitled to rely upon.").

Following Hanlon's production, there was further communication between Hanlon's employees and representatives, on the one hand, and Plaintiff, on the other, regarding additional discovery requests from Plaintiff. (*See* Dkt. 77-2 at ¶¶ 24-32; Dkt. 77-6; Dkt. 77-7; Dkt. 77-9). In fact, Hanlon says that "[a]fter [its] full production, Plaintiff attempted to transform his subpoena into an ongoing discovery program, sending a barrage of new demands, and asked Hanlon representatives to revolve their work calendars around his demands." (Dkt. 77-2 at ¶ 24). But the fact that Plaintiff sought additional discovery from Hanlon does not mean that there is anything left to enforce with respect to his original subpoena. Indeed—and again—there is simply no evidence before this Court that Hanlon has not, as its counsel has represented, fully

complied with the subpoena served upon it. *See Head v. Artus*, No. 14-CV-6546W, 2018 WL 635919, at *3 (W.D.N.Y. Jan. 31, 2018) (denying motion to compel where plaintiff "believe[d] that defendants [we]re wrongfully withholding an incident report," "[d]efendants dispute[d] that such an incident report exist[ed], and [plaintiff] . . . cited no record evidence to demonstrate or suggest that one exist[ed]").

Plaintiff's motion to enforce the subpoena therefore is denied as moot.

## B.    Hanlon's Request for Attorney's Fees

In opposing Plaintiff's motion, Hanlon asked that the Court award Hanlon reasonable expenses and attorney's fees pursuant to either Rule 37(a)(5)(B) or Rule 45(d)(1). (Dkt. 77-1 at 9-10). Hanlon says that in contrast to its "good faith" conduct in "producing all responsive materials," Plaintiff "served a frivolous motion after full compliance, misrepresented the Court's authority, threatened contempt, continued pressing for discovery far outside the subpoena's scope, and . . . refuse[d] to withdraw a motion already rendered moot." (*Id.* at 7). "As a result," Hanlon says, it was "forced to incur [costs] that no non-party should bear" and that should be repaid. (*Id.*).

Under Rule 37(a)(5)(B), a court "must, after giving an opportunity to be heard, require [the party who unsuccessfully moved to compel discovery], the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion." Fed. R. Civ. P. 37(a)(5)(B). Somewhat similarly, under Rule 45(d)(1), a court must "impose an appropriate sanction" on the party "responsible for issuing and serving a subpoena" when that party fails to "take reasonable steps to avoid imposing undue burden or expense on a

person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Such a sanction "may include . . . reasonable attorney's fees." *Id.*

While the Court agrees that Plaintiff's conduct here falls short of the standards according to which litigants are expected to conduct themselves, it finds that sanctions would not be appropriate at this time. As an initial matter, the first authority that Hanlon points to as justifying attorney's fees—Rule 37(a)(5)(B)—does not apply. As other courts have explained, "Rule 37 applies to a party's failure to comply with a discovery order, while Rule 45 addresses a non-party's failure to comply with a discovery subpoena." *Data Collective II, L.P. v. Baron Cap. Mgmt. Inc.*, No. 25-MC-00057 (JAV), 2025 WL 1380122, at *3 (S.D.N.Y. May 13, 2025) (quoting *Madigan v. Bronstein*, No. 18 MC 61, 2018 WL 1768283, at *2 (S.D.N.Y. Apr. 12, 2018)). Moreover, "Rule 45 provides its own set of mechanisms for enforcement." *Id.*

For those reasons, "the majority of district courts in th[is] Circuit have found that Rule 37 cannot support sanctions for a non-party's failure to comply with a Rule 45 subpoena." *Id.* (quoting *In re Dunne*, No. 3:17-CV-1399 (MPS), 2018 WL 4654698, at *8 (D. Conn. Sept. 27, 2018)). And at least one court has found that Rule 37 does not provide the authority for a sanctions award against a party that unsuccessfully moved to enforce third-party subpoenas. *See id.* at *2-3. Hanlon cites no contrary authority and does not address the distinction between Rule 37 and Rule 45. (*See* Dkt. 77-1).

In any event, even if Rule 37 applied here, this Court would still deny Hanlon's request for attorney's fees for lack of specific notice. As this Court previously has

explained, Plaintiff's *pro se* status does not immunize him from being sanctioned and ordered to pay fees and costs. (Dkt. 64 at 4). But "[w]hile a court may order a pro se litigant to pay legal fees, the court must adequately warn the pro se litigant before imposing such an order." *Papadimitriou v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 22CV2065LDHLB, 2023 WL 6385769, at *5 (E.D.N.Y. Sept. 29, 2023). And the Court is not convinced that Plaintiff was adequately warned here. After all, its previous warning to Plaintiff regarding the payment of attorney's fees was framed solely in the context of sanctions under Rule 37(a)(5) related to motions to compel, not motions to enforce third-party subpoenas. (*See* Dkt. 64 at 4). The Court did not provide an explicit warning regarding potential sanctions under Rule 45. (*See id.*)

Therefore, mindful of Plaintiff's *pro se* status, the Court declines to require him to pay Hanlon's attorney's fees under Rule 45(d)(1). Nonetheless, going forward, the Court expands the scope of its previous warning: **If the Court denies any future discovery motion filed by Plaintiff, then the Court may require him to pay reasonable expenses, including attorney's fees, to the party who opposed the motion, where such sanction is required or permitted under the Federal Rules of Civil Procedure.**

While the Court finds that Plaintiff deserves one more explicit warning, based on Hanlon's detailed and substantial representations (*see* Dkt. 77-2; Dkt. 77-3; Dkt. 77-4), Plaintiff's conduct in this matter requires further discussion. The Court has never issued any discovery orders in this case other than its Decisions and Orders denying Plaintiff's numerous motions and directing him to comply with the

procedural rules. Plaintiff <u>may not</u> represent that the Court has ordered any party to comply with any of his discovery demands if it has not done so. Further, as the Court has made clear to Plaintiff on multiple occasions, discovery under the Federal Rules is meant to be a cooperative process undertaken in good faith. Litigants should take special care not to impose an unnecessary burden on non-parties. Conduct that is threatening, coercive, intimidating, or harassing is anathema to the discovery process, and it will not be tolerated. And upon future evidence of such conduct, the Court may impose appropriate sanctions against Plaintiff.

In sum, Plaintiff's motion to enforce the subpoena against Hanlon is denied, and Hanlon's request for attorney's fees and reasonable expenses also is denied.

## II.    <u>Plaintiff's Motion to Compel Defendant</u>

As noted above, Plaintiff has also moved to compel Defendant to produce certain documents. (Dkt. 74). More specifically, Plaintiff argues that Defendant's production of documents was—and remains—incomplete, stating that "[o]n August 12, 2025—more than seventy. . . days after the original deadline—Defendant produced approximately 107 pages of documents in a single, untimely production, without any certification of completeness." (*Id.* at 2-3). And he says that while these documents were responsive to his original request, "[c]ritical gaps remain, including": (1) "[m]issing communications from December 2015[ to ]February 2016 concerning Hanlon['s] derivative design work"; (2) "[m]issing internal communications regarding Plaintiff's June 17, 2016 cease-and-desist letter"; and (3) "[n]o direct communications between Gallina principals and Hanlon," which he says "are reasonably expected to

exist." (*Id.*). He further contends that because Defendant has "withheld critical communications and project records while falsely certifying objections," sanctions are warranted under Federal Rule of Civil Procedure 37. (*Id.* at 3-4).

Defendant responds that this Court should deny Plaintiff's motion for two reasons. (Dkt. 80). First, it says, Plaintiff "failed to satisfy the meet-and-confer requirements set by this Court" as well as the Federal and Local Rules of Civil Procedure. (*Id.* at ¶ 15). Second, it argues that the "gaps" that Plaintiff alleges in its production "are neither critical nor exist." (*Id.* at ¶ 17). For those reasons, it contends that the motion to compel "should be denied in all respects" and that the Court should award the reasonable expenses and attorney's fees that Defendant incurred in opposing Plaintiff's motion. (*Id.* at ¶¶ 19, 21).

## A.    Rule 37 and the Meet and Confer Requirement

If a party fails to produce documents under Federal Rule of Civil Procedure 34, the opposing party may move for an order under Rule 37(a)(3)(B) to compel production. Fed. R. Civ. P. 37(a)(3)(B)(iv). As the Court explained in its July 1 Decision and Order (Dkt. 64 at 8-9), Rule 37 further states that a party moving to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make . . . discovery in an effort to obtain it without court action," Fed. R. Civ. P. 37(a)(1). Local Rule of Civil Procedure 7(d)(3) similarly provides that "[n]o motion for discovery and/or production of documents under Fed. R. Civ. P. 37 shall be heard unless accompanied by an affidavit showing that sincere attempts to resolve the discovery dispute have been

made." Loc. R. Civ. P. 7(d)(3). Like motions to enforce subpoenas, "[m]otions to compel, pursuant to Rule 37, are left to the sound discretion of the court." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 328 F.R.D. 450, 452 (S.D.N.Y. 2018) (quoting *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018)).

Also as this Court explained in its July 1 Decision and Order (Dkt. 64 at 8-9), the meet and confer requirement is not merely a box to be checked, *see Saliga v. Chemtura Corp.*, No. 3:12CV832 VAB, 2015 WL 851849, at *2 (D. Conn. Feb. 26, 2015). On the contrary, "[o]nly those matters that remain unresolved after serious attempts to reach agreement should be the subject of a motion to compel." *Cisse v. Mitchell*, No. 22-CV-6071FPG, 2024 WL 2794251, at *3 (W.D.N.Y. May 31, 2024) (quoting *Excess Ins. Co. v. Rochdale Ins. Co.*, 2007 WL 2900217, at *1 (S.D.N.Y. 2007)). The Court accordingly informed Plaintiff that "any future motion to compel filed without evidence of a serious good faith attempt to resolve the dispute, or without showing other circumstances justifying a waiver of Rule 37(a)(1)'s meet and confer requirement, will be summarily denied." (Dkt. 64 at 9); *see Baez Duran v. E L G Parking Inc.*, No. 18CIV6685GBDSLC, 2021 WL 1338982, at *2 (S.D.N.Y. Apr. 9, 2021) ("[I]t is well established that the failure to meet and confer prior to filing a discovery motion can be fatal to a party's application."). The Court reiterated this requirement during the discovery conference on July 23, 2025. (*See* Dkt. 67).

Plaintiff says that he complied with Rule 37 here. (Dkt. 74 at 3). But Defendant says he did no such thing (Dkt. 80 at ¶ 15), and the Court is inclined to agree. For one

thing, the parties did not actually meet and confer. And Plaintiff's own description of how he attempted to meet and confer with Defendant belies his assertion that he engaged in a sincere, good faith effort to resolve the dispute. On July 23, 2025, after the conference, Plaintiff sent Defendant's counsel a letter in which he "requested that Defendant produce or confer within 48 hours, no later than July 25, 2025, at 2:00 [p.m.], and stated that failure to respond would be treated as completion of the meet-and-confer process under Rule 37." (Dkt. 74-2 at 1-2, ¶ 3). More specifically, Plaintiff told defense counsel:

> I expect all documents concerning the creation, origin, instruction, or design of th[e Metropolitan sculpture's] frame—including drawings, correspondence, or agreements—to be produced by Friday, July 25, 2025, at 2:00 [p.m.], when I intend to meet and confer. Please contact me immediately if you are unable to make that time. Otherwise, I will treat this as our formal conference and proceed accordingly under Rule 37.

(*Id.* at 15).

Defense counsel responded the next day that he was not available on July 25 and instead offered to meet on July 28 or 29 or another date of Plaintiff's choosing.

(*Id.* at 16). Plaintiff's reply was hostile in tone:

> I proposed a specific time, gave formal notice, and provided a detailed written record. You declined. Let the record reflect: Rule 34 is complete, and Rule 37(a)(1) has been satisfied.
>
> I look forward to speaking with you tomorrow and ending this charade. I am not concerned about your tentative schedule and it is insulting that you do not consider mine.

(*Id.* at 18-19). He did not respond to defense counsel's offer to meet on another day.

(*See id.*).

In a second letter to defense counsel dated July 28, 2025, Plaintiff demanded "immediate" production by no later than July 29, 2025, at 5:00 p.m. (*Id.* at 26, 31). In addition, Plaintiff offered times for "a brief, 15-minute call" sometime in the next few days and stated that "[i]f [he did] not receive a confirmed time or a written response by Monday, July 29[] at 8:00 p.m., [he would] proceed with finishing a motion to compel on August 13, 2025." (*Id.* at 32 (bold omitted)). Defense counsel responded that he could "have a conference call with [Plaintiff] on [July 29] at either of the times [Plaintiff] suggested" as long as Plaintiff confirmed by the end of the day. (*Id.* at 35). Plaintiff then "made repeated . . . attempts to reach [defense] counsel" by telephone, calling him at least six times between 5 and 8 p.m. (*Id.* at 2, ¶ 5, 34). Defense counsel did not answer, and the parties did not meet that week.

About a week later, on August 7, 2025, Plaintiff sent defense counsel a third letter, repeating his threat to file a motion to compel. (*Id.* at 43-44). "If [he did] not receive a response, along with all relevant documents and information referenced during [the] July 23rd, 2025 conference, by 5[ p.m.] on August 8th, 2025," he wrote, he would "proceed to file a Motion to Compel and request Rule 37 sanctions without further notice." (*Id.* at 44). On August 12, 2025, defense counsel sent Plaintiff a set of additional documents, supplementing its first production as had been discussed at the July 23, 2025 conference. (*See* Dkt. 67; Dkt. 74-2 at 47; Dkt. 80-4).

Plaintiff characterizes this series of communication as consisting of repeated attempts on his part to confer in good faith while Defendant stonewalled and failed to "substantively respond" to any of his outreach. (*See* Dkt. 74-2 at 3, ¶ 7). The Court

disagrees with this characterization. It advised Plaintiff in the July 1 Decision and Order that a demand for immediate production was not consistent with the letter or spirit of Rule 37(a)(1). (*See* Dkt. 64 at 9). Yet the thrust of Plaintiff's supposed attempts to meet and confer here were demands that Defendant comply with deadlines Plaintiff sought to unilaterally impose. That is, rather than attempting to be part of a cooperative effort, Plaintiff engaged in a series of threats and—from what this Court can see—at least twice ignored defense counsel's attempts to find a common time to meet. Such conduct is simply inconsistent with both the letter and the spirit of Rule 37(a)(1), and it does not satisfy the meet and confer requirement. (*See* Dkt. 64 at 9).

Accordingly, Plaintiff's motion to compel is denied for failure to make a serious good faith effort to meet and confer regarding the underlying discovery dispute as required by this Court's July 1 Decision and Order and the Federal and Local Rules. *See also Williams v. City of Rochester*, No. 13-CV-6152W, 2018 WL 739097, at *1 (W.D.N.Y. Feb. 7, 2018) ("The failure to meet and confer is unacceptable, contravenes the parties' obligations under the Federal Rules of Civil Procedure, and justifies the denial of [plaintiff's] motion."). And because the Court denies Plaintiff's motion to compel, it also denies his request for sanctions.

### B.    Merits of Plaintiff's Motion to Compel

Even if Plaintiff had satisfied the meet and confer requirement, the Court would still deny his motion to compel. Defense counsel has represented—and supported this representation with affidavits—that the documents that Plaintiff

insists are missing from its production do not exist or are not in Defendant's possession, custody, or control. (Dkt. 80 at ¶ 17; *see* Dkt. 78 at ¶¶ 9-12; Dkt. 79 at ¶¶ 6-8). As this Court explained above, it is entitled to credit such statements. *See, e.g.*, *Greer*, 2020 WL 7028922, at *3; *Myers v. Saxton*, No. 9:20-CV-961 (DJS), 2022 WL 20208557, at *1 (N.D.N.Y. June 24, 2022) ("Generally, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible." (quoting *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016))).

Plaintiff's insistence that these documents do indeed exist and are being wrongfully withheld by Defendant appears to be rooted in speculation as well as the fact that Defendant supplied additional materials after its initial disclosure. (*See* Dkt. 74 at 2-3). But those disclosures were the result of discussion at the July 23 conference (*see* Dkt. 67), in which Plaintiff clarified and supplemented his additional requests and in which the Court shared its view that Defendant could not withhold documents on the grounds that Plaintiff already had copies in his possession, *see Matalavage v. Sheriff of Niagara Cnty.*, No. 20-CV-1254SK(F), 2023 WL 2043865, at *15 (W.D.N.Y. Feb. 16, 2023) ("That a requesting party is in possession of copies of requested documents is not a ground for a refusal to produce."). As such, the Court cannot find that these additional disclosures are evidence that Defendant is withholding documents.

Plaintiff also says that "serious discrepancies" between Hanlon's and Defendant's productions show that the latter is withholding documents. (Dkt. 74-2 at 6-7). But it is not clear to the Court that the documents Plaintiff points to from Hanlon (*see id*; Dkt. 72) were ever in Defendant's possession. In any event, according to the affidavit filed by Defendant's Director of Marketing, Lauren Gallina, Defendant has a "7-year document retention policy," suggesting that some documents from the period at issue—a period of almost a decade ago—simply may not have been retained by Defendant. (*See* Dkt. 79 at ¶¶ 1, 6).

In sum, because the defense says that the documents Plaintiff seeks do not exist or are otherwise not within their possession, control, or custody, and because there is no record evidence contradicting that statement, the Court also denies Plaintiff's motion to compel on the merits. *See Pierre v. Cnty. of Nassau*, No. 17CV6629LDHRER, 2022 WL 2872651, at *10 (E.D.N.Y. July 21, 2022) ("This Court could not compel production of video footage that the County has certified does not exist, and would not do so based on Plaintiff's bare speculation and conjecture that such footage must exist.").

## C.    Defendant's Attorney's Fees

As noted above, in its July 1 Decision and Order, the Court warned Plaintiff that "<u>if he files a motion to compel discovery that the Court then denies in full or in part, the Court may require him to pay Defendant its reasonable expenses incurred in opposing the motion, including attorney's fees, in accordance with Rule 37(a)(5)(B)-(C).</u>" (Dkt. 64 at 4). Attorney's fees may be awarded under Rule 37(a)(5)(B) where a

motion to compel was denied due to the movant's failure to comply with Rule 37(a)(1)'s meet and confer requirement. *See, e.g.*, *Matalavage*, 2023 WL 2043865, at *21; *Paget v. Principal Life Ins. Co.*, No. 112CV01575TWPMJD, 2014 WL 12749152, at *2 (S.D. Ind. Apr. 22, 2014).

Pursuant to Rule 37(a)(5)(B), because the Court is denying Plaintiff's motion to compel in full, the Court must, after giving Plaintiff an opportunity to be heard, require him to pay Defendant its reasonable expenses incurred in opposing Plaintiff's motion, including attorney's fees, unless the motion was "substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(B). Defendant also requests attorney's fees in its opposition to Plaintiff's motion. (Dkt. 80 at ¶ 21).

Because Plaintiff does not appear to have addressed Defendant's request for attorney's fees in any of his papers, the Court will afford Plaintiff an opportunity to be heard regarding this issue as set forth below.

## III.  **Motion for Extension of Time to Complete Discovery**

Finally, Plaintiff moves for a "limited, asymmetric extension" of time to complete discovery, asking the Court to extend the fact discovery deadline to allow him to "enforce[] existing requests and [to seek] narrowly tailored follow-up tied to materials already acknowledged or ordered but not produced." (Dkt. 85 at 2-3). Defendant opposes this request, and defense counsel submitted an affidavit attesting that Plaintiff declined Defendant's offer of filing a joint motion for an extension of time to complete discovery for both parties. (*See* Dkt. 94; Dkt. 94-1).

The Scheduling Order that this Court entered in this matter clearly stated that no extensions would be granted except upon a showing of good cause. (Dkt. 22 at 3). Plaintiff says that good cause supports his highly unusual request for an extension of time to complete discovery that would apply to one party only. (Dkt. 85 at 1-3). Indeed, he says that Defendant's pattern of "obstruction" justifies granting this request. (*Id.* at 2). But as this Court explained in denying his motion to compel, it finds no such pattern of obstruction here. The Court therefore denies Plaintiff's motion for a one-sided extension of time to complete discovery. Should the parties wish to jointly move for an extension of the deadlines set in the Scheduling Order, the Court will consider that request.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to enforce his subpoena against Hanlon (Dkt. 68) is denied as moot; Plaintiff's motion to compel discovery and for sanctions (Dkt. 74) is denied; and Plaintiff's motion for an extension of time to complete discovery (Dkt. 85) is denied without prejudice to the parties' jointly moving to extend discovery deadlines. Hanlon's request for attorney's fees and costs (Dkt. 77-1 at 9-10) is denied.

Plaintiff must show cause **no later than 30 days from the date of this Decision and Order** why the Court should not require Plaintiff to pay Defendant its reasonable expenses, including attorney's fees, incurred in opposing his motion to compel. Defendant may respond **no later than 14 days from the date of Plaintiff's submission**.

Defendant must also submit a sworn affidavit **no later than 30 days from the date of this Decision and Order** detailing its reasonable expenses, including attorney's fees, accompanied by any documentation demonstrating its expenditures. Plaintiff may respond to Defendant's affidavit no later than 14 days from the date it is filed.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: November 5, 2025
       Rochester, New York

- 22 -